**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Giovanna P. Zolfo,<br><br>     Plaintiff,<br><br>vs.<br><br>Westminster Village Incorporated,<br><br>     Defendant. | No. CV-19-05645-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendant Westminster Village Incorporated's Motion to Dismiss (Doc. 44) filed pursuant to Fed. R. Civ. P. 12(b)(6). The Motion is fully briefed and ready for consideration. (Docs. 44, 45, 50, & 53). For the following reasons, the Motion will be granted.

**I. BACKGROUND**

This case arises out of Plaintiff's time spent as an employee of Defendant. (Doc. 40 at 1). On July 22, 2013, Plaintiff injured her ankle at work. (Doc. 40 at 1). Plaintiff was cleared to return to work in a restricted capacity the next month. (Doc. 40 at 1). For several months, Plaintiff and Defendant disagreed on what constituted a reasonable accommodation for Plaintiff. (Doc. 40 at 4-11). Plaintiff also alleges Defendant engaged in "sex stereotyping" by urging her to dress more femininely. (Doc. 40 at 6-9). The disputes continued, and ultimately, Plaintiff left in March of 2015 and did not return to work. (Doc. 40 at 10). Plaintiff's employment benefits were cancelled on April 1, 2017. (Doc. 40 at 11).

On April 20, 2015, Plaintiff filed her first charge of discrimination with the EEOC.

(Doc. 50-1 at 2-3). In the charge, Plaintiff alleged gender discrimination and failure to accommodate claims under both the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964. (Doc. 50-1 at 2-3). On February 23, 2016, Plaintiff filed a second charge with the EEOC. (Doc. 50-1 at 5). The second charge alleged retaliation and hostile work environment allegations based on acts that occurred after the filing of the first charge. (Doc. 50-1 at 5). Plaintiff received her right to sue letter from the EEOC on August 28, 2019. (Doc. 40 at ¶ 8).

On November 11, 2019, Plaintiff filed the Complaint in this Court, alleging violations under the ADA and Title VII. (Doc. 1). After conferring with Defendant, Plaintiff filed a First Amended Complaint (the "FAC") on February 3, 2020. (Doc. 13). In the FAC, consistent with the substantive allegations in the original Complaint, Plaintiff alleged Defendant initially provided her with the necessary accommodations for her to perform her work tasks but thereafter refused to continue providing them. (Doc. 13 at 1-2). In addition, Plaintiff separately alleged Defendant discriminated against her based on her gender.[1] (Doc. 13 at 17-15).

On July 15, 2020, this Court dismissed the FAC without prejudice for Plaintiff to file a Second Amended Complaint (the "SAC"). (Doc. 38). The Court instructed Plaintiff to file the SAC because the FAC "lumped all the allegations under the ADA into one count and has done the same under Title VII" and, thus, it "constitute[d] impermissible pleading because Plaintiff must prove different elements for each of the four claims asserted." (Doc. 38 at 3).  On July 28, 2020, Plaintiff filed the SAC. (Doc. 40).

Most relevantly, the FAC had allegations of hostile work environment woven into the other claims. Thus, the SAC adds claims for "creating a hostile work environment in violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112" (Doc. 40 at 1, 14-16) and "creating a hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1)" (Doc. 40 at 2, 20-21).

---

[1] The FAC also alleged a claim for intentional infliction of emotional distress, but the parties then stipulated to the dismissal of that claim. (Docs. 19, 20).

2

The SAC now sets forth four causes of action. (Doc. 40). Plaintiff sets forth two claims under the ADA: One claim for failure to provide reasonable accommodations for her ankle injury (Count One) and one claim for hostile work environment based on her disability (Count Two). (Doc. 40 at 12-16). Plaintiff also sets forth two claims under Title VII: One sex stereotyping claim (Count Three) and one hostile work environment claim based on her sex (Count Four). (Doc. 40 at 14-21).

On August 18, 2020, Defendant filed a second Motion to Dismiss pursuant to Rule 12(b)(6), now before the Court. (Doc. 44).

## II.   STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" so that the defendant is given fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). A court may dismiss a complaint for failure to state a claim under Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When deciding a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

## III.   EXHAUSTION AND TIMELINESS

Persons seeking to file claims under Title VII or the ADA must first file a charge with the Equal Employment Opportunity Commission ("EEOC"). *See generally Fort Bend County, Texas v. Davis*, 587 U.S. ___ (2019); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir.1994); 42 U.S.C. § 2000e-5(c). The claims in the plaintiff's complaint must match the allegations in the EEOC charge or must be "like or reasonably related" to those allegations. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002), as amended (Feb. 20, 2002) (internal quotations omitted); *see also Josephs v. Pac. Bell*, 443 F.3d 1050, 1061–62 (9th Cir. 2006) (the ADA claims in the plaintiff's complaint must match the

allegations in the EEOC charge or be "reasonably expected" to grow out of those allegations). Although the language of EEOC charges should be construed "with utmost liberality since they are made by those unschooled in the technicalities of formal pleading," the "crucial element" of a discrimination charge "is the factual statement contained therein." *B.K.B. v*, 276 F.3d at 1100. Thus, if allegations in the Complaint are not reasonably related to the allegations in the EEOC charge, they fail for lack of administrative exhaustion.

The Ninth Circuit has held that "the continuing violations doctrine . . . allows courts to consider conduct that would ordinarily be time barred as long as the untimely incidents represent an ongoing unlawful employment practice." *Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008, 1014 (9th Cir. 2000) (internal citations omitted). In *National R.R. Passenger Corp. v. Morgan*, however, the US Supreme Court held that the Ninth Circuit's "continuing violations doctrine" only applies to hostile work environment claims, because "[t]heir very nature involves repeated conduct." 536 U.S. 101, 115 (2002). Thus, "*discrete* discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 102 (emphasis added); *see also Bird v. Dep't of Human Servs.*, 935 F.3d 738, 748 (9th Cir. 2019) (holding that, after the Supreme Court *Morgan* decision, "little remains of the continuing violations doctrine[, e]xcept for a limited exception for hostile work environment claims"). Thus, allegations of discrete acts that occurred before the 300-day window are untimely.

### A. Sex stereotyping and failure to accommodate claims

#### 1. Failure to accommodate claim

An employer's refusals to accommodate an employee's disability, unlike the creation of a hostile work environment, are discrete employment acts. *See, e.g.*, *Hall v. Fluor Hanford, Inc.*, No. CV-08-5029-EFS, 2009 WL 10675273, at *2 (E.D. Wash. June 1, 2009) ("a failure to accommodate is itself a discrete act"); *Porter v. California Dep't of Corr.*, 419 F.3d 885, 893 (9th Cir. 2005) (considering "refusing to grant [employee]'s requests for vacation or holidays, . . . threatening disciplinary action while she was on

medical leave, leaving a negative performance evaluation in her personnel file, and instructing her to enter the work site through the back gate" to be a discrete employment acts). Thus, any allegations of Defendant's failure to accommodate Plaintiff's disability which occurred before the 300-day window are time-barred.

Plaintiff's April 20, 2015 EEOC charge (attached to Plaintiff' Response as Exhibits 1) alleges that Defendant "has never allowed [her] to [her] work restrictions provided by [her] medical practitioners." (Doc. 50-1 at 2). The charge further alleged that Defendant "denied [her] reasonable accommodations for [her] condition and additionally because [Defendant] has in the past not adhered to the restrictions, [her] medical condition has become worse and now requires surgery." (Doc. 50-1 at 2). Plaintiff's second EEOC charge, filed on February 23, 2016 (attached to Plaintiff' Response as Exhibits 2), alleges that Plaintiff's "job duties were changed to increase [her] walking and standing, which directly contradicted [her] accommodation request." (Doc. 50-1 at 5).[2] Because the first EEOC charge was filed on April 20, 2015, any failure to accommodate that occurred before June 24, 2014 (300 days before the charge) will not be considered.

Here, the SAC alleges that Plaintiff saw doctor in August of 2013 who gave her certain accommodations, which included sitting for portions of the workday. (Doc. 40 at 12). Plaintiff alleges she "immediately returned to work," and was given a chair to sit in, but when she used it her supervisor yelled "why are you sitting down." (Doc. 40 at 4-3); *see also* (Doc. 40 at 12) (alleging that Plaintiff's supervisor "yelled at Plaintiff when she adhered to her restrictions and utilized the accommodation provided by upper management"). Assuming these comments from her supervisor were made within a year of Plaintiff's doctor's visit and before her May 2014 FMLA leave (as the SAC would suggest), these discrete acts occurred before June 24, 2014 and therefore cannot be considered by this Court.

---

[2] Because the other discrete acts of failure to accommodate alleged in Plaintiff's second EEOC charge do not appear in the Complaint (*e.g.*, that her supervisor Garth Bengun told her he needed to "work 10-14 hours a day"), they will not be considered.

Additionally, Plaintiff alleges that in August 2014, Defendant "reassigned Plaintiff" to a position that "required significantly more standing and walking than Plaintiff's previous managerial position." (Doc. 40 at 6). Plaintiff does not mention any reassignment of job duties, another discrete act, in the first EEOC charge. Although she does allege in the second EEOC charge that her "job duties were changed to increase [her] walking and standing," the second charge was not filed until February of 2016, well outside the 300-day window. (Doc. 50-1 at 5). The Court therefore cannot consider this discrete act of failing to accommodate her disability because it is time-barred.

Finally, Plaintiff did not raise any adverse employment actions in the EEOC charges. To prevail on an ADA failure to accommodate claim, Plaintiff must show she suffered an adverse employment action because of her disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (internal quotations omitted). An adverse employment action is one that "materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal quotation marks and alterations omitted). Here, Plaintiff alleges in the SAC that "Defendant took adverse actions against Plaintiff by failing to advise her of her schedule on account of her disability and subjecting her to negative performance reviews because she sought accommodations." (Doc. 40 at 14). Plaintiff further alleges "Defendant effectively terminated Plaintiff . . . by refusing to accommodate and ending Plaintiff's health benefits plan." (Doc. 40 at 14). However, these discrete employment acts were not raised in the EEOC charge and are therefore time-barred. Because Plaintiff alleged no facts in her EEOC charge regarding any adverse employment actions, her failure to accommodate claim fails in its entirety. *See, e.g.*, *Exby-Stolley v. Bd. of Cty. Commissioners, Weld Cty., Colorado*, 906 F.3d 900, 908 (10th Cir.) ("[P]roof of a failure to accommodate does not automatically satisfy the [adverse employment action requirement]").

///

///

6

### *2. Title VII sex stereotyping claim*

In Plaintiff's April 20, 2015 EEOC charge, she alleges Defendant "subjected [her] to different terms and conditions of employment in that [Defendant] has requested that [she] dress in a manner to be more feminine to the point where [Defendant] had another manager take [her] shopping for new attire." (Doc. 50-1 at 2).[3] Plaintiff further alleges she was discriminated against under Title VII "for not conforming to sex stereotypes about how women are expected to present themselves." (Doc. 50-1 at 2-3). All of the factual allegations supporting the sex stereotyping claim occurred after June 24, 2014 and are therefore timely. Specifically, the allegations about comments made about her clothing/hair and the shopping trip to buy more feminine clothes occurred in or around October 2014. (Doc. 40 at 6-9). Accordingly, these discrete acts of sex stereotyping were timely plead in the EEOC charge.

However, the sex stereotyping claim is not administratively exhausted. "Impermissible sex stereotyping is considered sex discrimination under Title VII where the plaintiff's non-conformity with traditional gender roles *informed an adverse employment action*." *Gonzales v. Marriott Int'l, Inc.*, 142 F. Supp. 3d 961, 980 (C.D. Cal. 2015) (emphasis added) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251 (1989) (superseded by statute on other grounds)). Here, the "adverse employment action" alleged by Plaintiff is that Defendant failed to provide her two-week schedule, and that similarly situated individuals were treated more favorably because they "were able to have their schedules accommodate their childcare." (Doc. 40 at 9). This discrete act does not appear in the April 20, 2015 EEOC charge, and it therefore cannot be considered here. The issue, then, is whether the remaining allegations contained in the EEOC charge are sufficient to make out a sex stereotyping claim. They are not.

An "adverse employment action" is one which "materially affects the compensation, terms, conditions, or privileges of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080,

---

[3] There are no substantive allegations regarding gender discrimination in the second EEOC charge.

1089 (9th Cir. 2008) (internal quotation marks and alterations omitted). "Adverse employment actions can include termination, demotion, failing to promote, denial of an available job, adverse job assignments, official discipline, and significant changes in compensation or benefits." *Ayala v. Frito Lay, Inc.*, 263 F. Supp. 3d 891, 905 (E.D. Cal. 2017). For example, in *Price Waterhouse*, the US Supreme Court held that the plaintiff had a Title VII claim based on sex stereotyping because she was denied partnership at her accounting firm, and was told she could improve her partnership chances if she would "walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry." 490 U.S. at 228. Here, the remaining allegations in the EEOC charge do not include any adverse employment actions. Accordingly, the sex stereotyping claim also fails in its entirety.

### B. Hostile work environment claims

Regarding the Title VII hostile work environment claim, Plaintiff's April 20, 2015 EEOC charge asserts that Defendant "requested that [she] dress in a manner to be more feminine to the point that [her] employer had another manager take [her] shopping for new attire" and that she was therefore discriminated against "for not conforming to sex stereotypes about how women are expected to present themselves." (Doc. 50-1 at 2-3). Regarding the ADA hostile work environment claim, the February 23, 2016 EEOC charge (attached to Plaintiff's Response as Exhibits 2) alleged that Plaintiff's "job duties were changed to increase [her] walking and standing, which directly contradicted [her] accommodation request" and that she was "targeted and treated with hostility based on [her] accommodation request." (Doc. 50-1 at 5). Additionally, Plaintiff alleged her supervisor stated "I don't give a f*ck about your doctor's note" and that she "needed to 'stay and work 10-14 hours a day' despite the accommodation request of 6-8 hours per day" and that the manager "verbally criticized [her] based on [her] restrictions." (Doc. 50-1 at 5). Both hostile work environment claims administratively exhausted and timely under the doctrine of continuing violations and will therefore be considered on the merits.

///

## IV. DISCUSSION ON THE MERITS

### A. Title VII Hostile Work Environment Claim

#### 1. Legal Standard

Title VII Hostile Work Environment claims based on sex require a plaintiff to show: (1) she was subjected to verbal or physical conduct of a sex-related nature, (2) the conduct was unwelcome, and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive work environment." *See Vasquez v. City of L .A.*, 349 F.3d 634, 642 (9th Cir. 2003); *Cozzi v. Cnty. of Marin*, 787 F.Supp.2d 1047, 1069 (N.D. Cal. 2011). A plaintiff must show that her workplace was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that [she] in fact did perceive to be so." *Nichols v. Azteca Restaurant Enters., Inc.*, 256 F.3d 864, 871–72 (9th Cir.2001). Whether a work environment is hostile depends upon "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

#### 2. Analysis

Plaintiff alleges Defendant "requested that Plaintiff attend a shopping trip with [a female manager] who would help Plaintiff pick out 'appropriate clothing.'" (Doc. 40 at ¶ 65, 78). Plaintiff says she attended the shopping trip "[f]earing for her job and further hostility from management," and alleges she was "forced to try on female clothing," and, as a result, she "was extremely emotionally distraught," she "sobbed publicly while trying to appease her employer and pick out feminine clothing," and she "felt extremely uncomfortable with what she was required to wear." (Doc. 40 at ¶ 6, 27). Regarding ongoing behavior, Plaintiff alleges Defendant "made discriminatory comments to Plaintiff regarding her gender a few times a week every week throughout Plaintiff's employment." (Doc. 40 at ¶ 65). As examples of these comments, Plaintiff alleges Defendant "asked Plaintiff to dress more like other female managers, specifically mentioning that Plaintiff

wear a lower-cut shirt" and "stated that Plaintiff's haircut was not appropriate, it was too short." (Doc. 40 at ¶ 65, 78). Plaintiff further alleges that Defendant "denied Plaintiff PTO because she was not the 'biological' mother" of her child, and that she reported the discriminatory comments to HR who refused to address them. (Doc. 40 at ¶ 66, 78, 80).

However offensive Defendant's comments about Plaintiff's appearance were, they are not severe or pervasive enough to constitute hostile work environment. *Compare Westendorf v. W. Coast Contractors of Nevada, Inc.*, 712 F.3d 417, 419 (9th Cir. 2013) (finding no hostile work environment where a supervisor called the employee's work "girly" work; announced that a large-breasted woman, whom he called "Double D," would be at a work event and thereafter remarked on her breasts at the event; and asked the employee whether women "got off" when they used a particular kind of tampon); *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 647 (9th Cir. 2003) (finding no hostile environment where the employee was told he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000) (finding no hostile work environment where the supervisor referred to females as "castrating bitches," "Madonnas," or "Regina" in front of plaintiff on several occasions and directly called plaintiff "Medea") *with Nichols v. Azteca Rest. Enters.*, 256 F.3d 864, 872–73 (9th Cir. 2001) (finding a hostile work environment where a male employee was called "faggot" and "fucking female whore" by co-workers and supervisors at least once a week and often several times per day); *Anderson v. Reno*, 190 F.3d 930 (9th Cir. 1999) (finding a hostile work environment where a supervisor repeatedly referred to the employee as "office sex goddess," "sexy," and "the good little girl" and where he humiliated the employee in public by drawing a pair of breasts on an easel while the employee was making a presentation patted her on the buttocks and told her she was "putting on weight down there"); *Draper v. Coeur Rochester*, 147 F.3d 1104, 1109 (9th Cir. 1998) (finding hostile work environment where plaintiff's supervisor made repeated sexual remarks to her, told her of his sexual fantasies and desire to have sex with her, commented on her physical characteristics, and

asked over a loudspeaker if she needed help changing her clothes). Defendants comments in this case, as offensive as they may have been, are not sufficiently severe to create a hostile work environment.

The act of urging Plaintiff to go on a shopping trip with another employee to pick out more feminine and revealing clothing would humiliate the average person, even if Plaintiff technically consented to the trip. The Court is certainly troubled by the incident and recognizes that the event caused Plaintiff pain. If similar events had occurred repeatedly, Plaintiff might very well have a claim for hostile work environment. *See Brooks v. City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000) (noting that "the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct") (citations omitted). But this one regrettable incident, coupled with the offensive but offhand remarks made by Plaintiff's supervisors, did not so pervasively alter the conditions of her employment. The Title VII hostile work environment claim fails.

**B. ADA Hostile Work Environment Claim**

*1. Legal Standard*

The ADA prohibits employment discrimination on the basis of a disability. 42 U.S.C. § 12112. "[T]he Ninth Circuit has not recognized a hostile work environment claim under the ADA and has declined to decide whether such a claim exists." *Rood v. Umatilla Cty.*, 526 F. Supp. 2d 1164, 1176 (D. Or. 2007) (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir.2003)). The Ninth Circuit has only "assum[ed] without deciding that a claim for claim for harassment or hostile work environment is cognizable under the ADA" for the purpose of appellate review. *See Baumgart v. State of Washington*, 189 F.3d 472 (9th Cir. 1999) (citing *Walton v. Mental Health Ass'n*, 168 F.3d 661, 667 (3d Cir. 1999)).

Several other circuits, however, have recognized hostile work environment as an actionable ADA claim because of the similarity between the language of the ADA and Title VII. *See Shaver v. Indep. Stave Co.*, 350 F.3d 716, 719–20 (8th Cir. 2003); *Fox v.*

*Gen. Motors Corp.*, 247 F.3d 169, 175 (4th Cir. 2001); *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 233 (5th Cir. 2001). Additionally, the Ninth Circuit has held that *if* it did recognize a hostile work environment claim under the ADA, a plaintiff would have to "identify particular statements or incidents of harassment 'sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment,'" similar to a Title VII claim under the same theory. *Baumgart*, 189 F.3d at *1. District courts within the Ninth Circuit address ADA hostile work environment claims on the merits and apply the same Title VII standard. *See, e.g.*, *Betti v. Kaiser Found. Health Plan, Inc.*, No. CIV-S-03-2678DFLDAD, 2006 WL 355148, at *5 (E.D. Cal. Feb. 15, 2006) (finding on the merits that the plaintiff "does not make out a specific claim of hostile work environment under the ADA"); *Rood*, 526 F. Supp. 2d at 1177 (finding that "there is at least a question of fact whether plaintiff suffered conduct unwelcome, abusive, and pervasive enough to create a hostile work environment" under the ADA).

*2. Analysis*

Plaintiff alleges that Defendant originally provided her with a chair as an accommodation so she could sit at work, but then "yelled at Plaintiff" when she used the chair. (Doc. 40 at ¶ 44). Plaintiff further alleges that Defendant "disciplined Plaintiff for leaving work early and claimed Plaintiff was unable to perform the essential functions of her job" and "emailed Plaintiff stating that she was not allowed to adhere to her work restriction of working less than eight hours without a manager's approval, regardless of a doctor's note." (Doc. 40 at ¶ 44-45). Plaintiff also alleges that Defendant's manager "raised his voice and cursed at Plaintiff regarding her restrictions" and that "in a manager meeting it was discussed by senior management that Plaintiff's injury was not severe or legitimate." (Doc. 40 at ¶ 46). Finally, Plaintiff alleges Defendant "subject[ed] her to negative performance reviews because she sought accommodations." (Doc. 40 at ¶ 50).

For the same reasons Plaintiff's Title VII hostile work environment claim fails, so too does her ADA hostile work environment claim. In *Denning v. Cty. of Washoe*, the Ninth Circuit assumed for the purpose of appellate review that hostile work environment claims

were cognizable under the ADA. 799 F. App'x 547 (9th Cir. 2020). There, the plaintiff alleged her employer "made two derogatory statements about her disability," "told her co-workers that she was a 'problem child' and a 'trouble-maker,' assigned her longer shifts and less desirable tasks, and 'subjected [her] to excessive scrutiny.'" *Id.* at 547. The court concluded that the employer's conduct "was not severe or pervasive enough to create a hostile work environment." *Id.* (internal citations omitted). Here, Defendant's offhand remarks questioning the validity of Plaintiff's injury (even when, on one occasion, it rose to the level of "yelling"), requiring her to work more than her accommodation allowed, and subjecting her to negative performance reviews because of her accommodations simply do not meet the standard of pervasiveness and severity required for a hostile work environment claim.

## V. CONCLUSION

For the foregoing reasons, all of Plaintiff's claims must be dismissed. Plaintiff's failure to accommodate and sex stereotyping claims are dismissed as untimely and/or for lack of administrative exhaustion. Further, Plaintiff's hostile work environment claims fail to allege sufficiently pervasive behavior from Defendant and, thus, fail to state a claim upon which relief can be granted. Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. 44) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's First Amended Complaint (Doc. 13) is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this action.

Dated this 27th day of October, 2020.

Honorable Steven P. Logan
United States District Judge